another government appeal this morning don't usually have two in one day yes your honor please the court my name is Joe Harrington I'm an assistant US attorney for the Eastern District of Washington that's Spokane and I'd like to reserve two minutes for rebuttal your honor this is this is a government's appeal from a district courts pretrial dismissal of an indictment which charged mr. Burke the defendant with escape from a residential reentry center in violation of 18 USC section 751 a okay so we have to get around Baxley right yes your honor all right and what do you think Baxley does to Jones you know is there a way to reconcile all of these I believe so your honor and here's what I would submit respectfully to the court is how Baxley can be can be distinguished first and with respect to Jones your honor Baxley itself distinguished Jones in that the inmate was released from a prison into a halfway house and then in the court found in Jones that that person was in federal custody and Baxley itself distinguished Jones because it was a incarceration Baxley was pre correct your honor and in Baxley the defendant was released pretrial on personal recognizance bond and it was subject to very very limited restrictions he was basically free to come and go as he chose but that again your honor that's that I think that's the major distinction is that that was in Baxley it was pretrial in Jones the Ninth Circuit recognized and I think Baxley itself recognized that that was a post-conviction process where the defendant was submitted into released into a halfway house so you're saying Jones still exist in the post convictions and so you're saying you're more similar to Jones than you are to Baxley that's correct your honor well I'm a practical person too but I obviously the practicality can't lend itself to when it comes to conflict with the law the law obviously has to prevail but what I see here is and I I'm not sure in terms of defendants should be careful what they wish for because when you let someone out on conditions on their own recognizance they haven't been obviously adjudicated at this point in time and what you're sure what you are doing is you're balancing protection of the public with making sure that they get to court and they adjudicate their matters if they wash out of wherever you until you have your adjudication now after someone's convicted and you're dealing with them as a judge in the sense of that you want to you also want to protect the public but you also want to make sure that they get whatever treatment that they get and so I think judges frequently use residential treatment programs that have pretty strict you know have the people pretty much under their thumb and it makes judges happy because they they know where the person is they feel that the public's protected but they also feel like the defendant is possibly working towards being a more model citizen they're getting the help that they need and so if if you get rid of Jones then what judges might be doing is they'd say well I'm just I might as well just send you to jail because if that's the case you know if you're gonna say it's not an escape in that situation I'd just send you to the jail in the first place and not worry about it if I understand your commentary judges that you know there's two purpose purposes I think and generally in cases to be admitted to a halfway house one is for some structured environment to try to help some rehabilitation efforts but also and I think this is well recognized is to protect the public from the dangers associated with federal criminals remaining at large well but I know when I was a judge if I could treat a defendant and protect the public then a trial judge if I could treat the defendant and protect the public I've liked that better than just throwing someone in jail but if it wasn't a structured environment I wouldn't I wasn't gonna send them there because I didn't feel they were they could function otherwise and I think that's exactly the case we have here your honor the judge ordered mr. Burke into a residential reentry program he was requirement that he seek employment and and he would account for his time and his whereabouts well yeah that's usual on halfway houses that's correct your honor but you know the interesting thing about this case it really connotes the fact that there is an element of protecting the public from federal criminals in fact in this case when mr. Burke fled and escaped from the half or the residential reentry program it was just a day later he was in Montana involved in a high-speed chase ultimately was charged with and convicted of criminal endangerment and was is currently serving I believe a four-year term of imprisonment yes but if he'd been put on probation probation would have been revoked and he the question is cited him for escape as opposed and if he then after he could only be indicted for escape if thereafter he failed to report for custodial interrogation you know how does your broad interpretation of custody comport with Congress's express intent to enact 751 as a way to prevent violent escapes from penal institutions I have a trouble equating halfway house with a penal institution your honor I think this comes back to the whole question about what the definition of that's the issue that's been teed up in this in this appellate brief briefing pretty ambiguous isn't it I wouldn't say it's ambiguous your honor I think you have to look at the context and again I go back to the to two things one is this is post conviction and it's a post conviction matter and also the limitations were very very strict that were placed on mr. Burke how strict were other than the usual halfway house restrictions about letting people know where you're going looking for a job helping with the chores etc etc well unlike Baxley in which in that case the defendant was basically free to come and go he just had to log in and out his times in and out well that's not true of most halfway houses well your honor I can tell you this halfway house and it's part of the 32 over 30 page document in the excerpt of record beginning at 17 there were severe restrictions mr. Burke was not free to come and go there were restrictions on his male privileges he was subject to search to your analysis he his restrictions for physical contact with visitors was was limited isn't that people on probation as well your honor it can be but in this case the defendant was ordered to go to a facility by way of a court order and I would submit your honor that probation does not involve this sort of custody that mr. Burke was facing well they can restrict where they can work they can restrict their friends they can they're all sorts of restrictions when you're put on probation depending on who you are and depending on what the court wants to wants to in this case the court decided not only would there be restrictions primarily for for rehabilitation efforts but also restrictions to protect the public and in this case the court also ordered the defendant to reside at a halfway house subject to all these restrictions well let me ask you this in I understand how you're asking us to define custody there's also 10th circuit cases of SAC and Swanson right yes your honor um are I have a couple of questions that I want you to address are the 10th circuit cases of SAC and Swanson reconcilable with our president in Baxley and then if if they are if we conclude that Burke was not in custody under 751 a with that conclusion create a circuit split with the 10th circuit and the 6th circuit and Rudinsky yes your honor what in my opinion in the government's opinion the we first have to but we've got to reconcile your definition with Baxley to your honor I think there's Baxley again the court in in Baxley expressly limited its application to the restrictive facts of the case and also distinguished that case as a pre-trial admission into a halfway house as opposed to Jones but what about SACs and Swanson and Rudinsky do they have to deal with the Baxley or can we reconcile if we go that way on your definition Baxley the reasoning in Baxley was you know was rejected in in the SAC matter that's the 10th circuit case and I believe that's why this or there would be a a conflict in the conflict no your honor 10th circuit rejected Baxley's reasoning rejected Baxley's reasoning but I think that in this case it's just you can distinguish between a pre-conviction a custody scenario as opposed to a post conviction what were they your honor I believe that in SAC that is the 10th court ordered the defendant to custody of a halfway house as a condition of pre-trial release and they determined it was in custody so there does seem to be some some some issue there with Baxley however there's a case of United States versus Gowdy so there's already a circuit conflict right between it appears if reading SAC and SAC's analysis of Baxley there does appear to be a decided in the briefs also would suggest that a defendant placed into a halfway house post conviction would be in custody under the statute I would submit this your honor I think were there petitions for cert on any of these cases there wasn't a US vs. Jones the case that was cited in distinguished in appealed further here's I would propose respectfully your honors to consider this test a diff I would submit that a defendant is in federal custody whenever pursuant to a lawful judgment of conviction that takes care of the threshold issue about pre-trial versus post conviction he or she the defendant has been ordered to present him or her self to federal authorities ie the defendant fails to report for sentencing at a federal institution or to be present at a facility and I would suggest that or president facility would be the case here mr. Burke was ordered to be president facility pursuant to a lawful judgment of conviction and he would be there for a federal person in custody by that order I think that would comply you know it's a you're just thinking of a convenient definition for this case but for that would exclude defendant charged with the crime was denied bail and put into jail right he can't escape pre-conviction your honor yes this test would say pursuant to a judgment lawful judgment of conviction and there is so a pre-trial prisoner who doesn't make much sense to me the I'm trying to account for the Baxley test well but they're always if anyone that escapes from the jail is escaping from the jail except under your definition but your definition doesn't that yeah that I should expand my death that sounds like you're in your definition overriding 751 a or something and of course going back to the definition under or that the statutory language under 751 refers to not only custody but confinement so in a situation where defendants placed in confinement in a jail situation that would be covered by the statute itself do you want to set the balance of your time thank you thank you they please a court and counsel peach waiter for mr. Burke the judgment in this case uses very precisely language it says that he was committed to the custody of the US Bureau of Prisons for seven months and 21 days upon his release from imprisonment he was to reside in a residential reentry center for up to 180 days he was given a placement there he was abide he was to abide by the rules and requirements and he was to remain there the words that were not used were custody he wasn't placed in the custody of the residential rent reentry center nor was the word confined used nor did the court's order require mr. Burke to go to the residential reentry center during certain hours let me just get your analytical framework from the standpoint backs they occurred after Jones right correct and so we can't say that it over it a three jet it didn't overrule Jones but so we have to somehow reconcile them is your analytical framework that your client situation is closer to Baxley than it is to Jones or are you saying that Baxley is exactly on point well Baxley is not exactly on point because it's a pretrial matter and so I think that there can be in certain situations I think these are factually driven cases and I think that there could be differences differences in a pretrial situation from a post-conviction situation I think the Jones is very he was still under the jurisdiction of the Bureau of Prisons he had he was still serving he's got a 10-year sentence he was still serving his 10-year sentence when he was released to the Hathaway house so he hadn't been released from that custody in it and in our brief but so but just so that I understand you're saying you're more like Baxley and we should follow Baxley but but not that Baxley is exactly on point correct and and I think that Jones is easily understood if we go back in history and look at the 1962 case of us versus person which was a Southern District of California case and in that case a youthful defender or a defendant was released from the Lompoc federal institution to a Hathaway house and I believe it was judge Bynes ruled that when mr. Baxley left I went drinking and didn't return that he couldn't be found guilty of escape because he was at the Hathaway house according to United States versus Vaughn which is a DC Circuit case that we cited in our brief Congress responded to the person decision by promulgating 18 USC 4082 which provided that if you were still serving your sentence with it and the jurisdiction of the Bureau of Prisons and now they were sending you to an half Hathaway house but you still weren't actually on parole that the extended your confinement extended to that Hathaway house and that you would be subject to prosecution under section 751 and so that makes Jones perfectly reconcilable with with Baxley. Would you agree that courts the courts that have construed what the word custody means in the context of escapes from residential re-entry centers and halfway houses have generally analyzed two factors first the restrictions on the defendant's freedom? Yes and I think that a court has to look at that and I think that the I think the court also has to be mindful of the direction of the Congress in in supervised release cases because and I think that the Tapia case which came out of the Southern District of California as well Justice Kagan said that custody or punishment is not there for rehabilitation but she also made some other good points that I think are very important to the analysis of what custody means in the supervised release case. Justice Kagan said and I quote her that supervised release quote may apply differently or even not at all depending on the kind of sentence under consideration and then she made an example of supervised release cases and she said that the statute that enables supervised release specifically did not mention 18 U.S.C. 3553 A to A which is retribution which is the punishment statute so what you get is is that from that we learned that you can't you shouldn't use supervised release as punishment it's something different and in fact if you go to the statute that provides for supervised release which is 3583 D2 it again omits A to A the punishment section. Well you just may not the argument you're making now seems to lead to the result that a person on supervised release could never be guilty of escape. No I'm not saying that at all. It's almost that but so let's get back to your earlier assertion that these then you you know responded to Judge Callahan's argument that yes you have to look at these two sets of circumstances right the conditions of release and you know the rules of the house but in that context how do you compare would say the conditions on Burke with respect to the conditions on Vaxley? Well they're not there's not. Is that apparent in the record? I think you might have some disagreement as to semantics used in the Vaxley decision with with what happened here I mean the Vaxley decision that talks in terms of he could come and go as he pleased well the fact here is that Mr. Burke could come and go as he pleased. But weren't his conditions if we're talking factually weren't they more onerous than the restrictions on Vaxley in person? I mean it seems to me you know I mean we're on a continuum spectrum here so it seems to me that you you would have to concede that they're more onerous than Vaxley but you're going to argue that they're less onerous than Jones. Well I disagree your Vaxley to to this case because the the rules he was required Mr. Burke was required to go out and look for employment. The rules say everybody's supposed to be employed so he certainly he's going to be let out to go do that and I believe it was the same in Vaxley he was supposed to be looking for work and so Mr. Burke could come and go in fact if you look at the rules he spoke Mr. Burke is supposed to go out by 9 a.m. in the morning to look for a job and be back by 4 p.m. and so he basically can come and go as he pleased he he had a curfew just like Mr. Vaxley did and if you look at the rules that he signed it at the excerpts at page 20 it says your residence at SRRC serves as a stepping stone toward reintegration back into into the community and that's telling Mr. Burke that you're taking the first step you've taken the first step back into the community you're now in the community I have a question about what the district court said obviously you prevailed in the district court the district court interpreted Jones and saying Jones was placed in a halfway house by the Bureau of Prisons quote as a portion of his imprisonment sentence unquote does it say that anywhere in the Jones opinion you know and I'd have to go back and look but I can tell you first certainly Jones is distinguishable because of 18 USC 4082 a that is the if there is a legal way to reconcile those two decisions that's exactly the way you do it because if mr. if we were talking about mr. Burke being serving a sentence and being sent to the Spokane reentry residential reentry center by BOP and he left certainly under 4082 it says you've committed escape under 751 it doesn't say that under the supervised release statutes in fact the supervised release statute directs the court to use the no greater deprivation of liberty than is reasonably necessary and that's found at 3583 d2 and it says you have to don't do that and you have to remember that mr. Burke is someone who had his release supervised release was modified in this case and if you look at the statute for modification of supervised release which is 3583 e4 it allows in an alternative to imprisonment but it says the quote defendant to remain in his place of residence during non-working hours unquote but the statute goes on to say and it can be compliance can be monitored electronically quote except that an order under this paragraph may be imposed only as an alternative to incarceration and so taken literally it basically says that under a modification of supervised release you can only be incarcerated or in custody during certain hours as an alternative to incarceration and here the court sentenced mr. Burke to a term of imprisonment and now he's on his term of supervised release the other thing we have to remember is that if you look at the terms of his supervised release he was ordered to report within 72 hours of release from the Bureau of Prisons to his parole officer probation officer is he an escapee if he fails to report within 72 hours he was ordered to remain in the Eastern Washington the District of Eastern Washington during his Washington would he be an escapee he was ordered to advise his probation officer if he moved and he had 10 days to tell him that if he moved and didn't tell his probation officer would that be would that be considered a an escape and if you look at the supervised release provisions which are basic basically incorporate the probation statute it talks about throughout there that you reside you can reside or participate in a program at a Community Correction Center you reside at a specific place you remain within the jurisdiction of permission and the only place that the supervised release statute uses the word custody is under subsection 10 and I'm looking at 3563 believe it's be 10 it says you remain in the custody of the Bureau of Prisons during nights weekends or intervals of time totally no more than a lesser of one year and so I think that these kind of cases have to be very have to be factually driven and if you have an order that says you're going to reside there we shouldn't engage in this artificial definition of residence and say well it isn't residence at all we told you it was a residence mr. mr. Burke but you were really in custody and when you fail to return you committed an escape I think that's unfair and it address two points first I would submit respectfully that the determination of custody involves two elements one the circumstances of release and to the extent of the restrictions on a defendant's liberty interests second with respect to distinguishing Jones in the Jones matter the Bureau of prison prisons in fact did designate the defendant to participate in a halfway house program course Bailey didn't rely on that or Baxley didn't rely on that actually just relied on the fact that this was a post conviction designation to the halfway house but it shouldn't matter for custodial purposes whether a defendant is sent to a halfway house by the Bureau of prisons or by a district court order in fact if anything the argument is stronger where there is a it requires custody by virtue of any process issued by the laws of the United States by any court judge or magistrate I would submit respectfully then if the Bureau of prisons decision in Jones was sufficient to find custody in halfway house clearly a district courts supervised release order here was similarly sufficient and in the end your honor it's the government's position that the district courts determination to dismiss the indictment was in an error and would request this court first that decision and remand this matter for reinstatement of the indictment thank you all right thank you both for your argument this matter will stand submitted
judges: Nelson, Tashima, Callahan